IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CITY OF CAMBRIDGE | : |
| | : |
| Plaintiff | : |
| | : |
| | : C.A. No.: 1:19:-cv-11005 |
| v. | : |
| | : |
| PURDUE PHARMA L.P. d/b/a PURDUE | : |
| PHARMA (DELAWARE) LIMITED | : (Removal from: |
| PARTNERSHIP; PURDUE PHARMA INC.; THE | : The Middlesex County |
| PURDUE FREDERICK COMPANY, INC.; | : Superior Court Civil |
| TEVA PHARMACEUTICALS USA, INC.; | : Docket No 1981CV01044) |
| CEPHALON, INC.; COLLEGIUM | : |
| PHARMACEUTICAL, INC.; JOHNSON & | : |
| JOHNSON; JANSSEN PHARMACEUTICALS, | : |
| INC.; ORTHO-MCNEIL-JANSSEN | : |
| PHARMACEUTICALS, INC. n/k/a JANSSEN | : |
| PHARMACEUTICALS, INC.; ENDO HEALTH | : |
| SOLUTIONS, INC.; ENDO | : |
| PHARMACEUTICALS, INC.; ALLERGAN PLC | : |
| f/k/a ACTAVIS PLC; ALLERGAN FINANCE, | : |
| LLC f/k/a ACTAVIS, INC. f/k/a WATSON | : |
| PHARMACEUTICALS, INC.; WATSON | : |
| LABORATORIES, INC.; ACTAVIS LLC; | : |
| ACTAVIS PHARMA, INC. f/k/a WATSON | : |
| PHARMA, INC.; MALLINCKRODT LLC, | : |
| SPECGX LLC; and INSYS THERAPEUTICS, | : |
| INC. | : |
| | : |
| *Manufacturer Defendants* | : |
| | : |
| -and- | : |
| | : |
| MCKESSON CORPORATION; CARDINAL | : |
| HEALTH, INC.; AMERISOURCE BERGEN | : |
| DRUG CORPORATION; CVS HEALTH | : |
| CORPORATION; CVS PHARMACY, INC.; | : |
| RITE AID CORPORATION; RITE AID OF | : |
| MASSACHUSETTS, INC.; WALGREENS | : |
| BOOTS ALLIANCE, INC.; WALGREEN | : |
| EASTERN CO., INC.; WALGREENS MAIL | : |
| SERVICE, L.L.C.; WALGREENS OF | : |
| MASSACHUSETTS, L.L.C.; WALGREENS | : |
| SPECIALTY PHARMACY, L.L.C.; WALMART, | : |

| | |
|---|---|
| INC.; WAL-MART.COM USA, L.L.C.; | : |
| WAL-MART STORES EAST, INC.; and | : |
| WAL-MART-STORES EAST, L.P., | : |
| | : |
|     *Distributor Defendants,* | : |
| | : |
|     -and- | : |
| | : |
| JOHN KAPOOR, RICHARD SACKLER, | : |
| THERESA SACKLER, KATHIE SACKLER, | : |
| JONATHAN SACKLER, MORTIMER D.A. | : |
| SACKLER, BEVERLY SACKLER, DAVID | : |
| SACKLER, and ILENE SACKLER LEFCOURT | : |
| | : |
|     *Individual Defendants*. | : |
| | : |

## NOTICE OF REMOVAL

In accordance with the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d)(2), 1441, 1446, and 1453, Defendant CVS Pharmacy, Inc. ("CVS"), with full reservation of defenses, gives notice of the removal of this action from the Middlesex County Superior Court to the United States District Court for the District of Massachusetts. This case is removable under CAFA because the lawsuit is essentially a class action lawsuit, litigation of this case in federal court promotes CAFA's overall purpose, and CAFA's statutory requirements are satisfied. In support of removal, CVS provides the required "short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a); *see also Dart Cherokee Basin Operating Co., LLC* v. *Owens*, 135 S. Ct. 547, 553 (2014) ("By design, § 1446(a) tracks the general pleading requirement stated in Rule 8(a) of the Federal Rules of Civil Procedure.").

### I.    Nature of Removed Action

1.    On April 12, 2019, Plaintiff, The City of Cambridge, filed a Complaint[1] in the Middlesex County Superior Court for claims relating to prescription opioid medications. Plaintiff

---

[1] The original Complaint is attached as **Exhibit 1**.

asserts claims against three defendant groups: manufacturers, distributors, and individual defendants. Plaintiff brings claims for public nuisance (Count One), common law fraud (Count Two), negligent misrepresentation (Count Three), negligence (Count Four), violations of Massachusetts General Laws ch. 93A, Section 11 (Count Five), unjust enrichment (Count Six), and civil conspiracy (Count Seven). Plaintiff seeks damages and equitable relief for alleged injuries to its residents and to itself.

2.     This action is one of more than 1,900 opioid lawsuits filed by government entities against manufacturers and distributors of prescription opioid medications. Plaintiffs in these cases allege that Defendants are liable for the economic and non-economic injuries suffered by resident doctors, health care payors, and opioid-addicted individuals, as well as for the costs incurred in addressing the opioid epidemic.

3.     On December 5, 2017, the Judicial Panel on Multidistrict Litigation ("JPML") created a Multidistrict Litigation in the Northern District of Ohio ("Opiate MDL") for cases just like this one—cases in which "cities, counties and states . . . allege that: (1) manufacturers of prescription opioid medications overstated the benefits and downplayed the risks of the use of their opioids and aggressively marketed . . . these drugs to physicians, and/or (2) distributors failed to monitor . . . and report suspicious orders of prescription opiates." *In re Nat'l Prescription Opiate Litig.*, MDL No. 2804, Dkt. No. 1 (Dec. 12, 2017 Transfer Order) (Exhibit 1). To date, more than 1,600 actions have been transferred to the Opiate MDL.

4.     Plaintiff's 214-page Complaint and attachments thereto, resembles nearly all of the complaints filed in the Opiate MDL. The bulk of the allegations in these complaints have been levied by cities and counties against the manufacturers for alleged deceptive marketing of

prescription opioids from approximately the 1990s to the present. In fact, but for the geographic assertions, the allegations are identical to those asserted in *The County of Summit, Ohio, et. al.* v. *Purdue Pharma L.P., et al.*, MDL No. 17-md-2804, Case No. 1:18-op-45090, a bellwether case that is currently being litigated in the Opiate MDL.

5. Plaintiff's Complaint also resembles each of the following cases which was removed under CAFA and transferred to the Opiate MDL:

    a. *Noble County, Ohio by the Noble County Commissioners* v. *Cardinal Health, Inc., et al.*, 2:18-cv-01379-EAS-EPD, Dkt. No. 1 (S.D. Ohio, Nov. 6, 2018) (Sargus, C.J.) (removed under CAFA and transferred the Opiate MDL);

    b. *Washington County, Ohio, By its Commissioners, et al.* v. *Cardinal Health, Inc., et al.*, 2:18-cv-01706-EAS-KAJ (S.D. Ohio, Dec. 14, 2018) (Sargus, C.J.) (removed under CAFA and transferred the Opiate MDL);

    c. *Meigs County, Ohio* v. *Cardinal Health, Inc.*, 2:18-cv-01582-EAS-EPD (S.D. Ohio, Dec. 6, 2018) (Sargus, C.J.) (removed under CAFA and transferred the Opiate MDL);

    d. *Jefferson County* v. *Dannie E. Williams, M.D., et al.*, 4:19-cv-00157, Dkt. No. 1 (E.D. Mo., Jan 31, 2019) (White, J.) (removed under CAFA and transferred the Opiate MDL);

    e. *The People of the State of Illinois, The People of Union County, and County of Union* v. *Purdue Pharma L.P., et al.*, 1:19-cv-2169 (Walker, J.) (N.D. Ill., Mar. 28, 2019) (removed under CAFA and transferred the Opiate MDL);

  f. *County of Carbon* v. *Purdue Pharma L.P., et al.*, 2:18-cv-05625 (E.D. Pa., Dec. 31, 2018) (Sanchez, J.) (removed under CAFA and transferred the Opiate MDL);

  g. *Delaware County, Pennsylvania* v. *Purdue Pharma L.P., et al.*, 2:18-cv-05627 (E.D. Pa., Dec. 31, 2018) (Sanchez, J.) (removed under CAFA and transferred the Opiate MDL);

  h. *Lynnfield v. v. Purdue Pharma L.P., et al.,* 1:19-cv-10172; and

  i. *Town of Randolph v. Purdue Pharma, L.P., et al.* 1:19-cv-10813.

  6. The thrust of the Complaint is that the "Manufacturer Defendants" allegedly engaged in a "disinformation campaign to open the market for their [opiate] drugs, despite the known risk of addiction." *See* Compl. § 139. This campaign, Plaintiff alleges, was launched "for reasons of greed, rather than a scientific basis, and they continue to misrepresent the safety and efficacy of opioid treatment for chronic pain." *Id*. at § 141. As part of this "campaign" Plaintiff alleges that Manufacturer Defendants "spent hundreds of millions of dollars . . . funding, assisting, encouraging, and directing [Key Opinion Leaders] to deliver scripted talks, publish misleading studies, and present CMEs that disseminated false and incomplete information to medical practitioners," and "deploying sales representatives, who visited doctors and other prescribers, who marketed their opioids for 'non-indicated' or off-label purposes, not approved by the FDA . . . ." *Id*. at ¶ 142.

  7. As to the "Distributor Defendants," Plaintiffs allege that they "fail[ed] to report suspicious orders, reasonably investigate such orders, or halt such orders, thereby knowingly, recklessly, or negligently making grossly excessive distributions of opioid drugs into the City of Cambridge, and its surrounding areas . . . ." *See* Compl. at ¶ 387. Plaintiff alleges that, as a result

of such activities, each of the Distributor Defendants "repeatedly and purposefully breached its duties under state statutory and common law with clear knowledge that a foreseeable result of its breach would be the diversion of dangerous prescription opioids for non-medical purposes." *Id.* at ¶ 388.

8.  Regarding the Individual Defendants, Plaintiffs allege that they controlled and directed the alleged misconduct engaged in by the Manufacturer Defendants. *See, e.g.*, Compl. ¶¶ 337-46; 524; 530-31.

9.  Based on these allegations, Plaintiff claims a litany of injuries to its residents and to itself stemming from the alleged abuse of addictive opioids. These include alleged damages in the form of expenses incurred in providing health, social, and law enforcement services related to opioid addiction and death, as well as economic losses on behalf of its citizens. *Id.* at ¶¶ 462-524.

## II. This Action Is Removable Under CAFA

10. Plaintiffs' lawsuit is removable under the CAFA, 28 U.S.C. §§ 1332(d) and 1453(b). That is because: (1) litigation of this case in federal court raises factual and legal issues of national importance that would further CAFA's overall purpose; and (2) each of CAFA's statutory requirements is satisfied. This Court must assess jurisdiction under CAFA at the time of removal. 28 U.S.C. § 1332(d).

### A. This Is an Interstate Case of National Importance

11. First, this lawsuit is precisely the type of case that Congress intended to be litigated in federal court. Congress has expressed its intent "to strongly favor the exercise of federal diversity jurisdiction over class actions with interstate ramifications." S. Rep. No. 109-14, at 35 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 3, 34; *see also Standard Fire Ins. Co.* v. *Knowles*, 568 U.S. 588, 595 (2013) ("CAFA's primary objective" is to "ensur[e] Federal court

consideration of interstate cases of national importance.") (citations and quotes omitted); *accord Dart Cherokee Basin Operating Co., LLC*, 135 S. Ct. at 554.

12. This case is one of hundreds of cases filed across the country in which government entities have sued prescription opioid manufacturers, distributors, and others for harms arising from the abuse of these drugs. The Opiate MDL has almost 2,000 cases that are part of a national opioid "crisis" and epidemic allegedly besieging certain areas of Massachusetts and the rest of the country. Plaintiff scripted its Complaint from complaints in cases already being litigated in the Opiate MDL. For example, Plaintiff asserts that its claims touch upon issues of national importance, as well as duties under federal law. *See, e.g.*, Compl. ¶ 1 (referring to an opioid epidemic in the United States); *id.* at ¶ 142 (contending that allegedly misleading marketing materials were distributed nationally); *id.* at ¶ 565 (alleging that Defendants violated their obligations and breached their duties under federal law); *id.* at ¶ 412 ("The National Retail Pharmacies have long been on notice of their failure to abide by state and federal law and regulations. . . .").

13. As Plaintiff avers, the issues in this case implicate factual and legal issues that span well beyond State lines and, as a result, should be litigated in federal court along with the other lawsuits in the Opiate MDL. In denying remand in another opioid case in the diversity context, the United States District Court for the Southern District of West Virginia observed the following:

> Here, where the opioid epidemic is pervasive and egregious, there is at least a possibility of prejudice to the defendants at the hands of a jury drawn exclusively from the very county that is the plaintiff in this suit. A federal jury casts a wider net and is drawn from a division that comprises several counties. All may have an opioid problem, but not one that is specific to the plaintiff county.

*City of Huntington* v. *AmerisourceBergen Drug Corp.*, No. CV 3:17-01362, 2017 WL 3317300, at *2 (S.D.W. Va. Aug. 3, 2017).

14. Plaintiff, like the other plaintiffs in the Opiate MDL, has alleged that the Distributor Defendants failed to make reports to the Drug Enforcement Administration ("DEA"). *See* Compl. ¶ 542 (alleging that Defendants were required to "halt the suspicious sales of drugs throughout the United States" and "alert the DEA"). Judge Polster has established protocols for the DEA to submit confidential and sensitive data from its internal databases for use in the litigation.[2]

15. In short, jurisdiction in this matter is consistent with and promotes the purpose of CAFA.

### B. CAFA's Statutory Requirements Are Met

16. To be removed under CAFA, this suit must qualify as a class action, there must be 100 members of the proposed class, the amount in controversy must exceed $5 million, and there must be minimum diversity between the parties. 28 U.S.C. § 1332(d); 28 U.S.C. § 1453. All these requirements are met here.

#### i. In Substance, This Case Is a Class Action

17. CAFA applies here because this case essentially is a class action. While Plaintiff has not alleged a putative class action on the face of its Complaint, and has taken pains to contend that there is no federal question presented, this case is removable because it is "in

---

[2] Less than two months after the MDL was created, Judge Polster convened the first day-long settlement conference on January 31, 2018. Judge Polster required attendance by party representatives and their insurers and invited attendance by Attorneys General and representatives of the DEA and FDA.

substance a class action." *Addison Automatics, Inc.* v. *Hartford Cas. Ins. Co.*, 731 F.3d 740, 742 (7th Cir. 2013).

18.     CAFA provides that "district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2); *see also Composite Co., Inc.* v. *American Intern. Group, Inc.*, 988 F. Supp. 2d 61, 74 (D. Mass. 2013) (recognizing that CAFA jurisdiction depends on whether the "claims of all proposed class members, aggregated, exceed $5 million"). CAFA "calls upon federal district court judges to look beyond the face of a complaint when determining whether federal jurisdiction exists over a matter that appears to be a class action in all but name." *W. Virginia ex rel. McGraw* v. *Comcast Corp.*, 705 F. Supp. 2d 441, 452 (E.D. Pa. 2010) (holding defendant properly removed action brought by the State of West Virginia against Comcast under CAFA because subscribers were the real parties in interest); *see also Bullard* v. *Burlington N. Santa Fe Ry. Co.*, 535 F.3d 759, 762 (7th Cir. 2008) ("[L]itigation counts as a class action if it is either filed as a representative suit or becomes a 'mass action' at any time.").

19.     CAFA defines a "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar state statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B). Consistent with Congress's overall objective in favoring federal diversity jurisdiction over class actions with interstate ramifications, "the definition of 'class action' is to be interpreted liberally. Its application should not be confined solely to lawsuits that are labelled 'class actions' . . . . *Generally speaking, lawsuits that resemble a purported class action should*

*be considered class actions for the purpose of applying these provisions*." S. Rep. No. 109-14, at 35 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 3, 34 (emphasis added).

20. Thus, where a lawsuit "resembl[es] a class action" by asserting claims both individually and on behalf of others, CAFA removal has been found proper. *Badeaux* v. *Goodell*, 2019 WL 398830, at *3 (E.D. La. 2019). Courts have refused to "prioritize a complaint's use of magic words over its factual allegations," and have held that CAFA jurisdiction exists even where the complaint "does not seek class certification" or "omits reference to" a state statute "analogous to Rule 23." *Williams* v. *Employers Mut. Cas. Co.*, 845 F.3d 891, 900–01 (8th Cir. 2017); *see also Dart Cherokee Basin Operating Co., LLC*, 135 S. Ct. at 554 ("[N]o antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court"); *Badeaux*, 2019 WL 398830 at *2 ("A lawsuit resembling a class action will not escape CAFA jurisdiction simply because it omits the words 'class action' or does not include the state rule or statute under which it proceeds as a class action.").

21. Here, Plaintiff is acting as a representative for a class of residents who were allegedly harmed, either directly or indirectly, by Defendants' purported misconduct. Plaintiff alleges that Defendants have inflicted both economic and non-economic injuries on their individual residents.

22. Plaintiff's alleged injuries derive from its residents' injuries and cannot be separated from those injuries. Plaintiff seeks to recover costs in providing law enforcement, medical, and social services for opioid addiction, emergencies, and overdose deaths, all of which stem from its residents' alleged opioid abuse and addiction. Damages, too—to the extent that there are any attributable to Defendants—would be a calculation of aggregate damages resulting

from individual instances of opioid addiction and death. For instance, Plaintiff alleges that Defendants' alleged scheme harmed "the public health of Americans, Massachusetts residents, and residents of the City of Cambridge." Complaint ¶ 10. *E.g*., Compl. ¶ 32 ("This public health crisis is a public nuisance to the City because it constitutes unreasonable interference with, and injury to, the public health, safety, peace, and welfare of its residents. . . ."). *See also id*. ¶¶ 346, 387, 391.

23. Plaintiff has expressly brought this action on behalf of its residents. Compl. ¶ 45.

### ii. CAFA's 100-Member Requirement Is Met

24. Plaintiff's Complaint satisfies CAFA's 100-member requirement because the putative class consists of thousands of residents and at least hundreds injured. *See* 28 U.S.C. § 1332(d)(5)(B); *see also* Compl. ¶ 43. In determining whether this requirement is met, the First Circuit has required that a defendant "show a 'reasonable probability' that the class contains more than 100 members . . . ." *Mack* v. *Wells Fargo Bank, N.A.*, 2011 WL 1344194, at *3 (D. Mass., Apr. 8, 2011) (quoting *Amoche* v. *Guarantee Trust Life Ins. Co.*, 556 F.3d 41, 48-49 (1st Cir. 2009)). "[T]he reasonable probability standard is ... for all practical purposes identical to the preponderance standard adopted by several circuits." *Amoche*, 556 F.3d at 50. "A party may meet this burden by amending the pleadings or by submitting affidavits." *Id*. at 49 n. 3 (quoting *Spielman* v. *Genzyme Corp.,* 251 F.3d 1, 5 (1st Cir.2001)).

25. Here, the Complaint alleges that in the City of Cambridge, which has "a population of approximately 105,162 people," *see* Compl. at ¶ 43, "has been struck particularly hard by the influx of opioid drugs and resulting boom in the number of opioid addicts." *Id*. at ¶ 465. The number of "opioid-related deaths in Cambridge has risen from 6 deaths in 2012 to 26 in 2016," *Id*. In addition, Plaintiff reports that the rate of neonatal abstinence syndrome ("NAS")

11

discharges "for Cambridge's region … in 2015 ranged from 7.7 to 9.8 per 1,000 hospital births." *Id*. at ¶ 483. Statewide, the "Commonwealth of Massachusetts saw 379 opioid-related deaths in 2000. . . . By 2016, opioid-related deaths had skyrocketed to 2,096 deaths . . . ." *Id*. at ¶ 462. Accordingly, the potential number of people who have been or may be affected thus well exceeds the 100-member requirement under CAFA.

### iii. CAFA's Minimal Diversity Requirements Are Met

26. There is minimal diversity between Plaintiffs and Defendants under CAFA. District courts have original jurisdiction of "any civil action in which the controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2). CAFA eliminates the requirement of complete diversity. Instead, CAFA requires only minimal diversity—meaning that the parties are diverse if the plaintiff's citizenship differs from that of at least one defendant. 28 U.S.C. § 1332(d)(2)(A).

27. For purposes of diversity jurisdiction, a political subdivision is a citizen of the state. *See Moor v. Alameda Cty.*, 411 U.S. 693, 717 (1973) ("[A] political subdivision of a State . . . is a citizen of the State for diversity purposes."). A corporation is "a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). For purposes of CAFA, the citizenship of any unincorporated association, such as limited partnerships and limited liability companies, is also determined by the entity's State of incorporation and principal place of business. 28 U.S.C. § 1332(d)(10).

12

28. Applying these principles, there is minimal diversity between the parties. Plaintiff City of Cambridge is a political subdivision of Massachusetts. And many of the Defendants are citizens of States other than Massachusetts. To name a few:

    a. Defendants Endo Health Solutions Inc. and Endo Pharmaceuticals Inc. are both corporations organized under the laws of Delaware and both maintain their principal places of business in Malvern, Pennsylvania. They are, accordingly, citizens of Delaware and Pennsylvania.

    b. Defendant Purdue Pharma L.P. is a limited partnership organized under the laws of Delaware and maintains its principal place of business in Stamford, Connecticut. It is, accordingly, a citizen of Delaware and Connecticut.

    c. Defendant Teva Pharmaceuticals USA, Inc. is a corporation organized under the laws of Delaware with its principal place of business in North Wales, Pennsylvania. It is, accordingly, a citizen of Delaware and Pennsylvania.

    d. Defendant Cephalon, Inc. is a corporation organized under the laws of Delaware with its principal place of business in Frazer, Pennsylvania. It is, accordingly, a citizen of Delaware and Pennsylvania.

    e. Defendant Johnson & Johnson is a corporation organized under the laws of New Jersey with its principal place of business in New Brunswick, New Jersey. It is, accordingly, a citizen of New Jersey.

      f.      Defendant Actavis LLC is a limited liability company organized under the laws of Delaware and its principal place of business is in Parsippany, New Jersey. Accordingly, it is a citizen of New Jersey and Delaware.

      g.      Walgreens Boots Alliance, Inc. is a corporation organized under the laws of Illinois with its principal place of business in Deerfield, Illinois. Accordingly, it is a citizen of Illinois.

      h.      McKesson Corporation is a corporation organized under the laws of Delaware with its principal place of business in San Francisco, California. Accordingly, it is a citizen of both California and Delaware.

29.    Because there is diversity of citizenship between at least one plaintiff and at least one defendant, this action meets the minimal diversity requirement under Section 1332(d)(2)(A).

### iv.    The Amount in Controversy Exceeds the Jurisdictional Limit

30.    The amount in controversy exceeds the jurisdictional threshold under CAFA. Where, as here, a Plaintiff alleges no specific amount of damages, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC*, 135 S. Ct. at 554. And, in making such determinations, "the claims of the individual class members shall be aggregated." 28 U.S.C. § 1332(d)(6).

31.    Here, Plaintiff alleges injuries resulting from opioid abuse and addiction that has allegedly afflicted Plaintiff and its residents with allegations extending as far back as the 1990s.

14

*See, e.g.,* Compl. ¶ 6. Given the extent of the alleged injuries and time period, the alleged amount in controversy easily exceeds $5 million.[3]

### III. Compliance With Procedural Requirements

32. CVS has satisfied all the procedural requirements for removal under 28 U.S.C. § 1446, and the District of Massachusetts.

33. CVS is filing this Notice of Removal pursuant to U.S.C. § 1441(a) in the United States District Court for the District of Massachusetts, because the state court in which the action is pending, the Middlesex County Superior Court, is within this federal judicial district and this division. This Notice is signed pursuant to Rule 11 of the Federal Rules of Civil Procedure.

34. CVS was served in this action on April 18, 2019.[4] CVS is removing the case within 30 days of that date; therefore, this removal is timely under 28 U.S.C. § 1446(b). *See Murphy Bros., Inc.* v. *Michetti Pipe Stringing, Inc.,* 526 U.S. 344, 356 (1999).

35. In accordance with 28 U.S.C. § 1446(a), a copy of "all process, pleadings, orders, and other documents then on file in the State Court," are attached as **Exhibit 1**, as set forth Supra. A certified copy of the state record will be transmitted to this Court pursuant to the local rules.

36. After filing this Notice, in accordance with 28 U.S.C. § 1446(d), CVS will serve a copy of this Notice upon the Plaintiffs, and will file a copy of the Notice with the Clerk of the Middlesex County Superior Court.

---

[3] The amount in controversy represents only what Plaintiff requests at this stage in the proceeding. This is not an admission that Plaintiffs are entitled to recover this amount. *See Plyler* v. *Whirlpool Corp.,* 2012 WL 469883, at *2 (N.D. Ill. Feb. 13, 2012) ("[A] defendant's statement in a Notice of Removal concerning the amount in controversy does not constitute a judicial admission to plaintiff's ultimate damage entitlement.").

[4] A copy of CVS's appearance is attached hereto as **Exhibit 2**.

37. For the purposes of removal based on diversity jurisdiction under 28 U.S.C. § 1332(a) and 28 U.S.C. § 1446(b), all defendants who have been properly joined and served must consent to removal. Under CAFA, however, "[a] class action may be removed . . . by any defendant *without* the consent of all defendants." 28 U.S.C. 1453(b) (emphasis added).

38. Nothing in this Notice of Removal should be interpreted as a waiver or relinquishment of any Defendant's right to assert any and all defenses or objections to the Amended Complaint, including lack of personal jurisdiction. If there are any questions that arise as to the propriety of removal of this action, Defendant CVS respectfully requests the opportunity to submit briefing, argument, and additional evidence as necessary to support removal, without waiver of its objection to personal jurisdiction.

### Conclusion

WHEREFORE, CVS removes this action to this Court for further proceedings according to law.

Dated: April 29, 2019

Defendants,
**CVS Health Corporation and CVS Pharmacy, Inc.**

By their attorneys,

*/s/Paul E. Dwyer*
Paul E. Dwyer, Esq. (BBO 553848)
Clint D. Watts, Esq. (BBO#692866)
McElroy, Deutsch, Mulvaney & Carpenter, LLP
Metro East Office Park
117 Metro Center Boulevard, Suite 1004
Warwick, RI 02886
Ph: 401.298.9001
pdwyer@mdmc-law.com
cwatts@mdmc-law.com

Conor B. O'Croinin\*
ZUCKERMAN SPAEDER LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202–1031
(410) 949–1160
cocroinin@zuckerman.com

Eric R. Delinsky\*
Alexandra W. Miller\*
ZUCKERMAN SPAEDER LLP
1800 M Street, NW, Suite 1000
Washington, DC 20036–5807
(202) 778–1800
edelinsky@zuckerman.com
smiller@zuckerman.com

\* denotes national counsel who will seek pro hac vice admission

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 29th day of April, 2019, a copy of the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System. A true and accurate copy of the within was e-filed and mailed to the below individuals:

Judith S. Scolnick, Esq.
Scott+Scott Attorneys At Law LLP
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
*Attorneys for Plaintiff*

David R. Scott, Esq.
Scott+Scott Attorneys At Law LLP
156 South Main Street
P.O. Box 192
Colchester, CT 06415
*Attorneys for Plaintiff*

John O. Mirick, Esq.
Mirick O'Connell Demallie & Lougee, LLP
100 Front Street
Worcester, MA 01608
*Attorneys for McKesson Corporation*

Caitlin Snydacker, Esq.
Morgan, Lewis & Bockius, LLP
One Federal Street
Boston, MA 02110-1726
*Attorneys for Rite Aid Corporation, Rite Aid of Massachusetts, Inc.,*

Christopher Jesse Markham, Esq.
Jones Day
100 High Street 201
Boston, MA 02110
*Attorneys for defendants, Walmart Inc., Wal-Mart.Com USA, L.L.C., Wal-Mart, Stores East, Inc.,Wal-Mart, Stores East, L.P.*

                                             */s/Paul E. Dwyer*
                                             Paul E. Dwyer

3804903-1